UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSEPH GALLO-KAPPUS, :
                    Plaintiff, :
v. :
   : **OPINION AND ORDER**
PUTNAM COUNTY, CORRECTION :
OFFICER GREAGOR, PC # 285, SERGEANT : 15 CV 6896 (VB)
SPANNELLI, SERGEANT MOONEY, :
CAPTAIN O'MALLY, and LIEUTENANT :
HANLEY, :
                    Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Joseph Gallo-Kappus, proceeding pro se and in forma pauperis, brings this Section 1983 action against Putnam County,[1] Correction Officer ("C.O.") Greagor, Sergeant Spinelli, Sargeant Mooney, Captain O'Malley,[2] and Lieutenant Hanley, alleging they violated his Fourteenth Amendment rights.[3] A liberal reading of plaintiff's complaint suggests plaintiff pleads (i) defendants were deliberately indifferent to plaintiff's medical needs; (ii) plaintiff's disciplinary proceeding deprived him of procedural due process; and (iii) the sentence imposed at the hearing deprived plaintiff of substantive due process.

Before the Court is defendants' motion for summary judgment. (Doc. #51).

For the reasons set forth below, defendants' motion is GRANTED.

---

[1] Putnam County was substituted for previously named defendant Putnam County Correctional Facility by Order dated August 29, 2016. (Doc. #29).

[2] Sergeant Spinelli and Captain O'Malley are incorrectly sued herein as Sergeant Spannelli and Captain O'Mally.

[3] Plaintiff's complaint alleges violations of the Eighth Amendment. However, the events giving rise to plaintiff's claim occurred when he was a pretrial detainee, such that the Fourteenth Amendment applies. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); (Randazzo Decl. Ex. B ("Pl.'s Tr.") at 20).

1

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

Defendants have submitted a memorandum of law, a statement of facts pursuant to Local Civil Rule 56.1, an affidavit, and supporting exhibits, which reflect the following factual background.[4]

Plaintiff is an inmate at Lakeview Shock Incarceration Facility in Brocton, New York, serving a five- to thirteen-year sentence for burglary. At the time of the events giving rise to his complaint, plaintiff was a pretrial detainee at Putnam County Correctional Facility (the "Facility"). Plaintiff had previously been incarcerated at the Facility from August 2013 to February 2015[5] for criminal possession of stolen property in the fourth degree.

I. Disciplinary Hearing

On July 10, 2015, defendant C.O. Greagor confined plaintiff to segregated housing pending a disciplinary hearing for charges related to an incident in which Greagor observed plaintiff receive something from another inmate. According to the misbehavior reports, Greagor questioned plaintiff, asking what the other inmate gave him, and plaintiff told him, "I don't have anything." (Randazzo Decl. Ex. E at COUNTY0032). Greagor then strip searched plaintiff and found marijuana and Alprazolam tablets in plaintiff's front shirt pocket.

---

[4] On February 20, 2018, the Court deemed the motion fully submitted and unopposed. (Doc. #63).

[5] Defendants' 56.1 statement asserts plaintiff was released in February 2014 and reincarcerated in April 2015. This timing does not make sense in light of the Facility's Disciplinary Board Findings and Final Decisions dated April 10, 2014, June 16, 2014, and December 3, 2014. (Randazzo Decl. Ex. C). Accordingly, plaintiff, who gave both a 2014 and 2015 release date at his deposition, was correct when he said he was released in February 2015. (Pl.'s Tr. at 11).

C.O. Greagor charged plaintiff with: (i) obstruction of correction officer duties; (ii) promoting prison contraband; (iii) possession of a controlled substance; (iv) perjury; and (v) possession of marijuana. On July 11, 2015, C.O. Lynch charged plaintiff with (vi) provoking speech and gesture for statements plaintiff made about harming Greagor for bringing the other five charges.

On July 27, 2015, at approximately 1:49 p.m., plaintiff received and signed the Facility's form Notice of Disciplinary Hearing, outlining the six charges against him and attaching documentation of the factual basis for each charge. The Notice of Disciplinary Hearing set the hearing date for July 29, 2015, at 1:00 p.m.

Defendant Sgt. Mooney was the hearing officer at the hearing on July 29, 2015, during which he took contemporaneous, handwritten notes. Defendants Sgt. Spinelli and C.O. Greagor also attended the hearing. Greagor testified and plaintiff cross-examined him. Plaintiff testified on his own behalf.

Sgt. Mooney found plaintiff guilty of all charges except obstruction of correction officer duties. Sgt. Mooney sanctioned plaintiff to serve 350 days in segregated confinement with loss of privileges and an additional 105 days held in abeyance. Sgt. Mooney recorded his findings in the Facility's form Disciplinary Board Findings and Decision, completed on the same day as the hearing. Plaintiff received a copy of Sgt. Mooney's findings on July 30, 2015.

On July 30, 2015, plaintiff appealed the decision to defendant Captain O'Malley, objecting to his hearing on three grounds. First, plaintiff objected to the determination of guilt on the perjury charge because he believed the statement he made to C.O. Greagor that he "didn't have anything" was not a lie in context. Greagor had asked plaintiff what he received from inmate Gonzalez; plaintiff had not, in fact, received the contraband from Gonzalez but from a

3

different inmate. Plaintiff argued he was not allowed to call Gonzalez as a witness because, at the time of plaintiff's hearing, Gonzalez was a co-defendant. Second, plaintiff objected that he was denied access to the law library and was therefore unable to prepare a defense.[6] Third, plaintiff objected because C.O. Lynch, who advanced the provoking speech and gesture charge, was not present at the hearing and did not testify. Plaintiff, however, did not call Lynch as a witness, nor did he raise this objection at the hearing. Defendant Lt. Hanley, the assistant facility administrator, responded to plaintiff's objections and denied the appeal.

On August 27, 2015, plaintiff wrote to Captain O'Malley to request a reduction of his time in segregated confinement. Lt. Hanley responded to plaintiff's letter, denying his request for leniency.

On or about November 2, 2015, plaintiff wrote to Putnam County Sheriff Donald Smith to ask for help addressing "multiple issues with [his] PDA." (Randazzo Decl. Ex. L). Captain O'Malley responded to plaintiff's letter to Sheriff Smith, advising plaintiff to "follow the Facility Rules and Regulations and use the grievance procedure for legitimate concerns." (Randazzo Decl. Ex. M).

Plaintiff served approximately 300 days of his sanction in segregated confinement.

II.     Plaintiff's Second Mattress

Prior to the events giving rise to this suit, plaintiff underwent surgery to remove a benign tumor in his back. As a result, plaintiff suffers from back pain. While at the Facility, nurses treated plaintiff by giving him ibuprofen and showing him exercises to stretch and strengthen his back.

---

[6] At his deposition for this case, plaintiff said the library was closed for maintenance while he was waiting for his hearing.

On April 17, 2015, plaintiff filed a Health Service Request Form with the Facility's medical staff to request a second mattress to alleviate his back pain. Within three to five days, plaintiff received a second mattress.

On July 29, 2015, a correction officer discovered one of plaintiff's mattresses was destroyed—the stuffing had been removed and some of it flushed down plaintiff's toilet. Plaintiff was charged with destruction of government property. Correction officers confiscated the mattress as evidence of the charge.

At a disciplinary hearing held on August 14, 2015, in front of Sgt. Mooney, plaintiff pleaded no contest to the charge. Sgt. Mooney found plaintiff guilty. On September 19, 2015, plaintiff received a copy of the disciplinary findings and decision.

Plaintiff also faced a felony criminal mischief charge arising from the same conduct. Plaintiff pleaded guilty to disorderly conduct to resolve the felony charge.

Plaintiff communicated with the Facility medical staff to obtain another mattress. Plaintiff was issued another mattress approximately two or three weeks after the destroyed mattress was confiscated.

Plaintiff did not file a grievance regarding the weeks he did not have a second mattress.

## DISCUSSION

I.  Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a

reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.  Due Process Claims

Defendants argue the July 29, 2015, hearing afforded plaintiff constitutionally sufficient process and the sanction imposed at that hearing did not violate plaintiff's right to substantive due process.

The Court agrees.[7]

A.  Procedural Due Process

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation omitted). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation omitted) (alteration original). Although there is no bright-line rule for establishing when segregated housing rises to the level of a constitutional violation, courts consider both the duration and conditions of confinement. See id. In assessing the duration prong of the analysis,

---

[7]  As an initial matter, plaintiff adequately grieved his due process claims by appealing the determination of the July 29, 2015, hearing, which resulted in plaintiff's confinement in segregated housing. See Davis v. Barrett, 576 F.3d 129, 131–32 (2d Cir. 2009) (per curiam).

"restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (per curiam).

Plaintiff served 300 days in segregated confinement, where he remained isolated for twenty-three hours a day without access to books, television, telephone calls, letters, or access to the commissary. This length of time in segregated housing is sufficient to establish a liberty interest. See Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000).

Having found plaintiff's confinement in segregated housing created a liberty interest, the Court next addresses whether the July 29, 2015, hearing afforded plaintiff sufficient process.

It did.

When an inmate's liberty interest is implicated, "[b]ecause '[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply.'" Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)) (alterations original).[8] The procedural due process afforded to a prisoner charged with a violation in a disciplinary proceeding consists of: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).

---

[8] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

First, plaintiff was given advance written notice of the disciplinary charges. Due process requires that prison officials give the accused inmate notice twenty-four hours before the hearing. See Sira v. Morton, 380 F.3d at 70. Plaintiff received a Notice of Disciplinary Hearing on July 27, 2015, at approximately 1:49 p.m. (Randazzo Decl. Ex. G). The hearing occurred approximately forty-eight hours later on July 29, 2015, at 1:00 p.m.

Second, plaintiff was able to call witnesses and present evidence. Plaintiff cross-examined C.O. Greagor and testified on his own behalf. Although plaintiff objected to his hearing on the ground that C.O. Lynch did not attend, it is clear from the record that plaintiff did not call Lynch, despite clear instructions he could do so.

To the extent plaintiff was told he could not call Gonzalez as a witness, this did not deprive plaintiff of due process. Although "the right to present evidence is basic to a fair hearing," the Supreme Court has recognized that an "inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases." Ponte v. Real, 471 U.S. 491, 495 (1985). The Second Circuit has also held that "a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may . . . undermine authority," Wolff v. McDonnell, 418 U.S. at 566, with the caveat that officials may be required to explain their reasoning for doing so, in a limited manner, either as part of the administrative record or in a future court proceeding based on an inmate's claim that such a denial deprived them of due process. Ponte v. Real, 471 U.S. at 497.

Sgt. Mooney did not allow Gonzalez to testify at the hearing because he was plaintiff's co-defendant. This reason serves the penological interest of preventing coordinated testimony

9

between co-defendants. Moreover, Gonzalez's testimony would have been immaterial to the contraband-related charges, as plaintiff would have called him mainly to impeach C.O. Greagor's testimony. (Pl.'s Tr. at 89). See Finny v. Coughlin, 2 F. App'x 186, 191 (2d Cir. 2001) (summary order) (hearing officer may exclude immaterial or duplicative testimony that is not "significantly exculpatory"). Plaintiff testified he could not refute the charges related to his possession of contraband, underscoring the insignificant nature of Gonzalez's potential testimony.

As for the perjury charge, the Court infers plaintiff wanted Gonzalez to corroborate his defense that C.O. Greagor asked plaintiff if he had anything hidden in his buttocks, rather than a general question whether plaintiff had any contraband on him. Plaintiff argues it was the former, such that when he responded he did not have anything, it was not a lie, because the contraband was found in his shirt pocket. Even assuming Gonzalez could have testified to those semantic subtleties, Sgt. Mooney was within his rights to exclude Gonzalez in light of countervailing safety interests and because Gonzalez's testimony would not have been significantly exculpatory.

Third, plaintiff was heard by a fair and impartial hearing officer. "An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (collecting cases). In his objection to the hearing, plaintiff did not assert Sgt. Mooney was not fair and impartial, nor does the record provide any evidence to that end. Indeed, by virtue of Sgt. Mooney's comprehensive notes, which plaintiff testified accurately reflected the hearing, as well as the dismissal of one charge against plaintiff, it appears from the record that Sgt. Mooney was a fair and impartial hearing officer.

Fourth, on July 30, 2015, plaintiff was provided a written statement of the evidence relied on and the reason for the disciplinary action. (Randazzo Decl. Ex. H).

In short, plaintiff's disciplinary hearing comported with minimum constitutional procedures for inmates. Accordingly, the procedural due process claim must be dismissed.

B.  <u>Substantive Due Process</u>

The Court reads into plaintiff's complaint a substantive due process claim arising from plaintiff's confinement in segregated housing for 300 days.

To the extent plaintiff pleads such a claim, it must be dismissed.

Substantive due process protects individuals from government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense. <u>See</u> <u>Lowrence v. Achtyl</u>, 20 F.3d 529, 537 (2d Cir. 1994). In assessing whether restrictions on pretrial detainees comport with substantive due process, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose." <u>Bell v. Wolfish</u>, 441 U.S. 520, 538 (1979). Therefore, segregated housing does not violate substantive due process "where prison officials subjected pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." <u>Almighty Supreme Born Allah v. Milling</u>, 876 F.3d 48, 55–56 (2d Cir. 2017).

Here, plaintiff served 300 days in segregated housing for violating five separate Facility rules. Those violations implicated prison safety and security as plaintiff received and concealed contraband drugs. Moreover, defendants assert the sanction imposed on plaintiff increased with

11

each violation,[9] such that the calculation of time plaintiff was to spend in segregated housing was not arbitrary. Therefore, plaintiff's sanction was based on evidence of plaintiff's risk to institutional security and was not excessive in light of plaintiff's repeated infractions.

Accordingly, plaintiff's substantive due process claim must be dismissed.

III. Deliberate Indifference to Plaintiff's Back Injury

Defendants argue plaintiff failed to exhaust administrative remedies regarding the removal of his second mattress as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The Court agrees.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). However, only those remedies that are "available" to the prisoner must be exhausted. Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016) (citing Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)).

The Putnam Correctional Facility Inmate Rules and Regulations set forth the grievance procedure for inmates. To file a complaint at the Facility, inmates must complete a complaint

---

[9] Plaintiff had previous adjudications of guilt memorialized in reports dated April 10, 2014 (provoking speech: 14 days served; 1 day to be served in segregated housing), June 16, 2014 (possession of a controlled substance: 25 days served, 5 days to be served in segregated housing; trespass and unauthorized location: 16 days served; 9 days to be served in segregated housing), and December 3, 2014 (promoting prison contraband and possession of a controlled substance: 36 days served, 184 days to be serves in segregated housing, later vacated because the hearing was untimely). (Randazzo Decl. Ex. C).

form, which can be procured from the housing unit officer. The complaint is then discussed between the inmate and the housing officer. During that discussion, the inmate and housing officer complete a form with information regarding the steps taken to find a solution to the problem and whether the problem was corrected. The sergeant reviews the completed form, then returns it to the inmate who can choose to accept the resolution or file a grievance.

To file a grievance, the inmate must complete a grievance form, which can be obtained from the housing unit officer. The grievance is then decided by the grievance coordinator. The inmate may either accept the decision of the grievance coordinator or file an appeal to the facility administrator. The inmate may either accept the decision of the facility administrator or file an appeal to the New York State Commission of Correction Citizens Policy and Complaint Review Council.

Plaintiff was aware of the grievance procedure at the Facility and has filed prior grievances while at the Facility. Nevertheless, plaintiff did not file any grievance regarding his lack of a second mattress. Plaintiff testified, "this inmate had filed a medical slip, a sick call slip, and I talked to the nurse. . . . But I don't believe this inmate filed a grievance for [the lack of a second mattress]." (Pl.'s Tr at 57).[10]

It is undisputed that plaintiff did not exhaust his administrative remedies. Therefore, the deliberate indifference claim must be dismissed.

---

[10] Pointedly, plaintiff went on to testify, "I was starting to realize that all the grievances that I'm doing and all the letters might start pissing people off and make my time harder, especially with the letters I sent to my father. He was advising me the same thing: Try to stay low key, try to do it in-house instead of going through grievances and stuff." (Pl.'s Tr at 58–59).

13

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #51) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

Dated: May 25, 2017
       White Plains, NY

                      SO ORDERED:

                      _____
                      Vincent L. Briccetti
                      United States District Judge